IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

S.W., a minor by S.G., his parent, and
S.G., in her individual capacity,

Ca.R., a minor, and Ch.R, a minor,
by D.R., their parent, and
D.R. in her individual capacity,

P.F., a minor, by A.F., his parent, and
A.F., in his individual capacity,
       Plaintiffs,

-vs-
                Case No: 14-CV-792

Tony Evers, in his official capacity
as Wisconsin Superintendent of Public Instruction
125 S. Webster Street, P.O. Box 7841
Madison, WI 53707-7841

State of Wisconsin Department of Public Instruction,
125 S. Webster Street, P.O. Box 7841
Madison, WI 53707-7841

Elkhorn Area School District
3 North Jackson Street
Elkhorn, WI 53121

Greendale School District
6815 Southway,
Greendale, WI 53129

Muskego-Norway School District
S87 W18763 Woods Road
Muskego, WI 53150,
       Defendants.

---

## COMPLAINT

---

The Plaintiffs allege as follows:

1. The State of Wisconsin has enacted a statute governing the open enrollment of students in Wisconsin public schools, namely Wis. Stat. §118.51 (the "Open Enrollment Law").

Wisconsin's Open Enrollment Law creates an excellent program that allows students to transfer to a school district other than the one in which they reside. If families are not happy with the school district where they live, "open enrollment" gives parents a choice in their children's public education. The program is immensely popular. For the 2013-2014 school year, 42,929 Wisconsin students applied for open enrollment.

2. However, children with disabilities do not have the same access to the open enrollment program as children without disabilities. Wisconsin law permits school districts to deny the open enrollment applications of children with disabilities, solely on the basis that they have a disability. In the 2013-2014 school year, over 1,000 disabled children had their applications for open enrollment rejected solely on the basis of their disability. This lawsuit seeks a ruling that children with disabilities should be treated the same as children without disabilities in the Open Enrollment Program.

## PARTIES

3. Plaintiff, S.W., is a minor citizen of Wisconsin, whose current address is c/o Wisconsin Institute for Law & Liberty, 1139 E. Knapp Street, Milwaukee, WI 53202. As a minor, and a student, under the circumstances of this case, he seeks to have his identity kept confidential but his actual name and address will be provided to defense counsel pursuant to a protective order that plaintiffs will seek from the court at the inception of this litigation.

4. S.W. is a student and a qualified individual with disabilities for the purposes of federal disability law, including the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act ("Section 504").

5. S.G. is the parent and next friend of S.W. whose current address is c/o Wisconsin Institute for Law & Liberty, 1139 E. Knapp Street, Milwaukee, WI 53202. She seeks to have

her identity kept confidential to protect the confidentiality of her son, but her actual name and address will be provided to defense counsel pursuant to a protective order that plaintiffs will seek from the court at the inception of this litigation. S.G. sues both on behalf of S.W. and on her own behalf. As a parent of a child with a disability, S.G. has a particular and personal interest in preventing discrimination against her child.

6. Plaintiff, Ca.R., is a minor citizen of Wisconsin, whose current address is c/o Wisconsin Institute for Law & Liberty, 1139 E. Knapp Street, Milwaukee, WI 53202. As a minor, and a student, under the circumstances of this case, she seeks to have her identity kept confidential but her actual name and address will be provided to defense counsel pursuant to a protective order that plaintiffs will seek from the court at the inception of this litigation.

7. Plaintiff, Ch.R., is a minor citizen of Wisconsin, whose current address is c/o Wisconsin Institute for Law & Liberty, 1139 E. Knapp Street, Milwaukee, WI 53202. As a minor, and a student, under the circumstances of this case, she seeks to have her identity kept confidential but her actual name and address will be provided to defense counsel pursuant to a protective order that plaintiffs will seek from the court at the inception of this litigation.

8. Ca.R. and Ch.R are sisters. Both are students and both are qualified individuals with disabilities for the purposes of federal disability law including the ADA and Section 504.

9. D.R. is the parent and next friend of Ca.R. and Ch.R., whose current address is c/o Wisconsin Institute for Law & Liberty, 1139 E. Knapp Street, Milwaukee, WI 53202. She seeks to have her identity kept confidential to protect the confidentiality of her daughters, but her actual name and address will be provided to defense counsel pursuant to a protective order that plaintiffs will seek from the court at the inception of this litigation. D.R. sues on behalf of both,

Ca.R. and Ch.R., and on her own behalf. As a parent of children with disabilities, D.R. has a particular and personal interest in preventing discrimination against her children.

10. Plaintiff, P.F., is a minor citizen of Wisconsin, whose current address is c/o Wisconsin Institute for Law & Liberty, 1139 E. Knapp Street, Milwaukee, WI 53202. As a minor, and a student, under the circumstances of this case, he seeks to have his identity kept confidential but his actual name and address will be provided to defense counsel pursuant to a protective order that plaintiffs will seek from the court at the inception of this litigation.

11. P.F. is a student and a qualified individual with disabilities for the purposes of federal disability law, including the ADA and Section 504.

12. A.F. is the parent and next friend of P.F. whose current address is c/o Wisconsin Institute for Law & Liberty, 1139 E. Knapp Street, Milwaukee, WI 53202. He seeks to have his identity kept confidential to protect the confidentiality of his son, a minor, but his actual name and address will be provided to defense counsel pursuant to a protective order that plaintiffs will seek from the court at the inception of this litigation. A.F. sues both on behalf of P.F. and on his own behalf. As a parent of a child with a disability, A.F. has a particular and personal interest in preventing discrimination against his child.

13. The defendant, Tony Evers, is sued in his official capacity as Wisconsin Superintendent of Public Instruction. Superintendent Evers has his offices and principal place of business at the Wisconsin Department of Public Instruction, 125 S. Webster Street, Madison, WI 53707-7841. Superintendent Evers, along with the Wisconsin Department of Public Instruction ("DPI"), is responsible for overseeing and administering Wisconsin's Open Enrollment Law, including determining the process for open enrollment applications, preparing and distributing the open enrollment applications, hearing appeals by parents whose applications for open

enrollment were denied, developing an outreach program to educate parents about open enrollment, and submitting an annual report to the governor about open enrollment.

14. The DPI is an agency of the State of Wisconsin with its offices and principal place of business at 125 S. Webster Street, Madison, WI 53707-7841. The DPI, along with the Superintendent of Public Instruction, is responsible for overseeing and administering Wisconsin's Open Enrollment Law. Under the Supremacy Clause of the U.S. Constitution, any section of the Open Enrollment Law which discriminates against children with disabilities is preempted by federal law. The DPI is not entitled to sovereign immunity in this case based upon 42 U.S.C. § 12202 and Section 504.

15. The defendant, Elkhorn Area School District, is a "school district" as that term is used in Chapters 115 through 121 of the Wisconsin Statutes. The Elkhorn Area School District has its offices and principal place of business at 3 North Jackson Street, Elkhorn, WI 53121.

16. The defendant, Greendale School District, is a "school district" as that term is used in Chapters 115 through 121 of the Wisconsin Statutes. The Greendale School District has its offices and principal place of business at 6815 Southway, Greendale WI 53129.

17. The defendant, Muskego-Norway School District, is a "school district" as that term is used in Chapters 115 through 121 of the Wisconsin Statutes. The Muskego-Norway School District has its offices and principal place of business at S87 W18763 Woods Road, Muskego, WI 53150.

18. The Defendants are all "public entities" under the ADA and are recipients of federal funding. As a result, they are covered by the ADA and Section 504.

**JURISDICTION AND VENUE**

19.     This case is brought under 28 U.S.C. § 2201, 42 U.S.C. §§12132 and 12133 and 42 U.S.C. § 1983 and challenges those sections of Wisconsin "Open Enrollment Law" which: (a) discriminate against children with disabilities who seek open enrollment and (b) are, as a result, preempted by federal law.

20.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Fourteenth Amendment to the U.S. Constitution, and under federal disability law, including the ADA and Section 504.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the defendants Evers and DPI are residents of this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**CAUSE OF ACTION FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT, THE ADA, AND SECTION 504**

*FACTUAL BACKGROUND*

22.     Education, as provided through and in accordance with the Open Enrollment Law, is a service, program or activity provided by the Defendants.  Open enrollment is described as a "program" by the DPI on its open enrollment website ("[t]he inter-district public school open enrollment *program* allows parents to apply for their children to attend public school in a school district other than the one in which they reside") (emphasis added), http://oe.dpi.wi.gov/; by state law (*See* Wis. Stat. 118.51(15)(a)).  The non-partisan Legislative Fiscal Bureau also refers to open enrollment as a state program in its informational paper titled the "Open Enrollment *Program*" (emphasis added) (http://legis.wisconsin.gov/lfb/publications/Informational-Papers/Documents/2013/27_Open%20Enrollment%20Program.pdf).

6

23.     The Plaintiffs are denied the benefit of, and prohibited from participating in, the open enrollment program solely by reason of their disabilities, or with respect to S.G., D.R., and A.F., solely by reason of their association with a person with disabilities.

24.     Specifically, children with disabilities do not have the same access to the open enrollment program as children without disabilities. Wisconsin law, including but not necessarily limited to Wis. Stat. § 118.51(5)(a)4, permits school districts to deny the open enrollment applications of children with disabilities, solely on the basis that they have a disability.

25.     According to Wis. Stat. § 118.51(3)(a)(3), a nonresident school district has the power to accept or deny an application for open enrollment. Wis. Stat. § 118.51(5) lays out the criteria for a nonresident school district to reject an open enrollment application. It allows nonresident school districts to determine the number of students with disabilities that it will accept, including the option to accept none, even if it is accepting students without disabilities. As a result, every year school districts in Wisconsin set quotas for students with disabilities under the Open Enrollment Law. This results in discrimination against children with disabilities and denies them their right to Equal Protection under the Fourteenth Amendment to the U.S. Constitution. In 2013-2014 alone, over 1,000 children with disabilities were rejected for open enrollment based on school district decisions that special education spaces were not available. Superintendent Evers and the DPI permit school districts to set separate quotas for children with disabilities and deny appeals of such decisions by parents who have children with disabilities.

26.     Superintendent Evers and the DPI have failed to take any action prohibiting school districts from discriminating on the basis of disability under the Open Enrollment Law. School districts are regularly allowed to set open enrollment quotas for children with disabilities,

including setting quotas of zero, while accepting students without disabilities. Superintendent Evers and the DPI have upheld the decisions by school districts to discriminate on the basis of disability on appeal.

27. Superintendent Evers and the DPI have established and implemented the policies and procedures that govern the open enrollment program in the State of Wisconsin and those policies and procedures permit school districts to discriminate against children due to their disabilities.

28. Superintendent Evers and the DPI also force parents on the open enrollment application to declare whether the child has an individualized education program (IEP) or receives special education. Thus, the application signals to the receiving district whether the child has a disability.

29. The Plaintiffs have been adversely impacted by the discrimination against children with disabilities permitted under Wisconsin law.

*S.W.'s and S.G.'s experience with open enrollment.*

30. S.W. resides in the Wauwatosa School District. S.G does not believe S.W. is receiving the type of education he should in Wauwatosa. The problems in the Wauwatosa School District reached a boiling point in spring 2012 when S.G. filed a complaint with DPI because S.W. was illegally physically restrained by an employee at the Wauwatosa School District.

31. S.G. has determined that a better choice for S.W. would be a public school outside Wauwatosa. Thus, in 2013, S.G. applied for open enrollment for S.W. to the Greenfield School District. S.W. was rejected. Consequently, in November 2013, because S.G. was so dissatisfied with the Wauwatosa School District and was not successful in open enrolling him in a different

8

public school district, she enrolled her son into a private school. The cost for tuition and related services needed by S.W. at the private school is over $30,000 for a full year.

32. In the spring of 2014, S.G. decided that a private school was not a good long-term solution because of the high cost.

33. In 2014, S.G. applied, on behalf of S.W., for open enrollment into the Whitefish Bay School District, the Elmbrook School District, and the Elkhorn School District.

34. S.W. was rejected by all three districts. The denials by both the Elmbrook District and the Elkhorn District were based solely on S.W.'s disability.

35. At the time S.W.'s application was rejected, the Elmbrook District and the Elkhorn District had created two sets of open enrollment quotas: one for children with disabilities and one for children without disabilities. For example, the Elkhorn School Board set no cap on open enrollment seats for non-disabled students, but rejected P.F.'s application because he has a disability.

36. Although other families in Wisconsin are able to enroll their children in public schools that they choose through open enrollment, because the Open Enrollment Law permits school districts to discriminate against children with disabilities, S.G. has not been able to enroll S.W. in the public school that is best for S.G., and her only choice has been to continue to send S.G. to a private school at the cost of over $30,000 for a full year of tuition and related services.

37. These are costs that S.G. should not have to pay because her son is entitled to receive an education in the public schools. These costs are damages suffered by S.G. because the Open Enrollment Law permits school districts in Wisconsin to discriminate against children with disabilities.

### *Ca.R.'s, ChR.'s and D.R.'s experience with open enrollment.*

38.     Both Ca.R. and Ch.R. reside in the Milwaukee Public School district ("MPS"). D.R. is dissatisfied with the education they have been receiving in MPS.

39.     D.R. believes that the situation with respect to her daughters' education at MPS has substantially deteriorated in the last two years.  As a result, D.R. would like to take advantage of the Open Enrollment Law, and like tens of thousands of other parents, enroll her children in a public school outside of MPS.

40.     In 2013, D.R. applied under the Open Enrollment Law to the Greenfield School District for both Ca.R. and Ch.R.  Both applications were rejected.

41.     In 2014, D.R. applied under the Open Enrollment Law for both children to the Greenfield and Greendale School Districts.  The applications were denied by both districts.

42.     Greendale treats children with disabilities differently than children without disabilities and has separate open enrollment quotas for each.  The applications of Ca.R. and Ch.R were both rejected by the Greendale School District in 2014 solely on the ground that they are disabled.

43.     Because D.R. remains dissatisfied with MPS and because she has not been able to enroll her daughters in a school district outside of MPS under the open enrollment program, D.R. decided to enroll her daughters in a private school.  The cost of the private school and associated services needed by her daughters is approximately $37,500 per year.

44.     Although other families in Wisconsin are able to enroll their children in public schools they choose through open enrollment, because the Open Enrollment Law permits school districts to discriminate against children with disabilities, D.R. has not been able to enroll her daughters in a public school that is best for them, and her only choice has been to continue to

send her daughters to a private school at the cost of $37,500 per year for tuition and related services.

45. These are costs that D.R. should not have to pay because her daughters are entitled to receive an education in the public schools. These costs are damages suffered by D.R. because the Open Enrollment Law permits school districts in Wisconsin to discriminate against children with disabilities.

### *P.F.'s and A.F.'s experience with open enrollment.*

46. P.F. resides in the Racine Unified School District. P.F. has applied under the Open Enrollment Law to transfer into a number of different school districts. But, due to his disability, P.F. has been rejected twelve times in the last five years, most recently by the Muskego-Norway School District. With no other option, he remains in the Racine Unified School District.

47. P. F.'s application to Muskego-Norway was denied solely because he is disabled. In their January 2014 Board meeting, Muskego-Norway decided to approve 55 open enrollment spaces, but *zero* for children with disabilities.

48. In addition, the Racine Unified School District blocked P.F.'s application to transfer to Muskego-Norway asserting that the transfer would result in an "undue financial burden" on the Racine Unified District. P.F. and A.F. could have appealed that decision by the Racine Unified School District but the rejection by the Muskego-Norway School District made such an appeal moot.

49. The rejection of P.F.'s application for open enrollment was not unique to the 2014-2015 school year or unique to the Muskego-Norway School District. For example, in 2013 P.F. applied to transfer into the Union Grove School District for the 2013-2014 school year. The

application was denied solely because of P.F.'s disability.  P.F., through A.F., appealed this decision to the DPI.  On August 27, 2013, the DPI rejected the appeal and upheld the school district's decision.  DPI determined that Union Grove's decision to not take any children with disabilities in fifth grade for open enrollment was not "arbitrary or unreasonable."  During the same school year, P.F.'s sister, who does not have a disability, was able to successfully apply for open enrollment to Union Grove for the third grade.

50. Although other families in Wisconsin are able to enroll their children in public schools that they choose through open enrollment, because the Open Enrollment Law permits school districts to discriminate against children with disabilities, A.F. has not been able to enroll P.F. in a public school that is best for P.F.

51. Because A.F. has not been able to enroll P.F. in a public school of his choice and A.F. remains unsatisfied with the Racine School District, A.F. has decided to incur the cost of moving to the Waterford School District, which A.F. believes will provide a better education for P.F.  He has purchased a lot and is building a home in the Waterford School District.  He has incurred these costs and expenses solely because of problems in the Racine School District and his inability to open enroll P.F in another school district.

*CLAIM FOR RELIEF*

52. Wisconsin's Open Enrollment Law prevents S.W., Ca.R., Ch.R. and P.F from being able to transfer to and receive an education from a school district other than the school district in which they reside solely because of their disabilities.  Open Enrollment, of the type described herein, is a service, program and/or activity that the State of Wisconsin, the DPI and school districts within the state provide to all children.  By denying this service, program, or

activity to children with disabilities, the Defendants are violating the ADA and Section 504, and denying the Plaintiffs their right to Equal Protection.

53. The ADA states that "Congress finds that . . . discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, [and] *education* . . ." 42 U.S.C. §12101(a)(3) and that the purpose of the ADA is to, among other objectives, "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101 (b)(1) (emphasis added).

54. Title II of the ADA provides that "no qualified individual with a disability shall, on the *basis of disability, be excluded from participation* in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by the public entity." 42 U.S.C. § 12132 (emphasis added). Under the ADA, "public entity" means "any State or local government." 42 U.S.C. § 12131 (A).

55. The ADA regulations state that a public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, *on the basis of disability*:

> Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; . . . . .
>
> vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.
>
> CFR 35.130 (b)(1)(i)-(vii)

56. The ADA regulations also state that: "A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:

> (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;
>
> (ii) That have the purpose or effect of defeating or substantially

> impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities;  or
>
> (iii) That perpetuates the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.
>
> 28 CFR 35.130 (b)(3)

57. The regulations also state: "A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."  28 CFR 35.130 (b)(8).

58. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

59. The regulations further provide that:

> (a) No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which received Federal financial assistance…..
>
> (4) A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration
>
> (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap,
>
> (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or
>
> (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State.

60. 42 U.S.C. §1983 provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

61. Defendant Evers acted under color of law in depriving children with disabilities of their rights, privileges, or immunities secured by the Constitution and laws. The defendant school districts adopted policies and acted according to those polices in denying the open enrollment applications of children with disabilities and, as a result, deprived them of their rights, privileges, or immunities secured by the Constitution and laws.

62. The Defendants are all public entities under the ADA and recipients of federal funding. As a result, they are covered by the ADA and Section 504 of the Rehabilitation Act. The Defendants are violating the ADA and Section 504 of the Rehabilitation Act by excluding individuals with a disability, on the basis of the disability, from participation in and/or denying them the benefits of the services, programs or activities of a public entity, and subjecting them to discrimination by the public entity.

63. The Defendants are acting under color of law and subjecting the Plaintiffs to the deprivation of their right to Equal Protection and the deprivation of their rights under the ADA and Section 504.

64. As set forth in *Toledo v. Sanchez*, 454 F.3d 24, 38-39 (1st Cir. 2006), "the thirty years preceding the enactment of the ADA evidence a widespread pattern of states unconstitutionally excluding disabled children from public education and irrationally

discriminating against disabled students within schools. Faced with this record of persistent unconstitutional state action, coupled with the inability of earlier federal legislation to solve this 'difficult and intractable problem,' Congress was justified in enacting prophylactic § 5 legislation in response."

65. As further stated in *Toledo v. Sanchez* this conclusion was justified by a report before Congress in 1983 indicated that tens of thousands of disabled children continued to be excluded from public schools or placed in inappropriate programs. U.S. Civil Rights Commission, *Accommodating the Spectrum of Individual Abilities* 28–29 (1983). Testimony before the House Committee on Education and Labor and the Senate Subcommittee on Disability Policy included statements by numerous disabled individuals who had been excluded from participation or faced irrational prejudice at all levels of public education. *See generally,* Staff of House Comm. on Education and Labor, 101st Cong., *Legislative History of Pub.L. No. 101–336: The Americans with Disabilities Act* (Comm. Print 1990).

66. By allowing school districts to have a separate open enrollment quota for children with disabilities, the Open Enrollment Law violates the rights of such children to Equal Protection which the ADA was intended to prevent.

67. If the Plaintiffs are successful in this action then they are entitled to: (a) a declaration that certain sections of the Open Enrollment Law are unlawful, (b) equitable relief including an injunction, (c) damages, and (d) attorneys fees. The remedies under the ADA for a violation of 42 U.S.C. § 12132 are contained in 42 U.S. C. § 12133, and include "[t]he remedies, procedures, and rights set forth in section 794a of title 29", which in turn incorporates the remedies, procedures, and rights set forth in a variety of other provisions of the U.S. Code including section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16) and title VI of the

Civil Rights Act of 1964. Under Section 504, the remedies for a violation are the remedies and rights set forth in title VI of the Civil Rights Act of 1964(42 U.S.C. 2000d et seq) and attorneys fees. Under Section 1983 the remedies for a violation include those contained in 42 U.S.C. §1988. Collectively, these statutory provisions support the Plaintiffs' Prayer for Relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A. A declaration that Wis. Stats. §118.51(5)(a)4 of the Open Enrollment Law violates the Equal Protection Clause, the ADA and/or Section 504 of the Rehabilitation Act.

B. An injunction prohibiting the Defendants from interpreting or enforcing any section of the Open Enrollment Law in a manner that discriminates against children with disabilities and, as a result, violates the Equal Protection Clause, the ADA and/or Section 504 of the Rehabilitation Act.

C. Damages in an amount determined by the trier of fact from those defendants that caused the damages to the respective plaintiffs.

D. Costs and attorneys' fees, including attorneys' fees under 42 U.S.C. § 12133 and 42 U.S.C. §1988.

E. Such equitable or other relief as this Court may consider just and appropriate.

Respectfully submitted this 18th day of November, 2014.

        WISCONSIN INSTITUTE FOR LAW & LIBERTY, Inc.
        Attorneys for Plaintiffs

        /s/ RICHARD M. ESENBERG_____
        Richard M. Esenberg, WI Bar No. 1005622
        414-727-6367; rick@will-law.org
        Brian McGrath, WI Bar No. 1016840
        414-727-7412; brian@will-law.org
        Charles J. Szafir, WI Bar No. 1088577
        414-727-6373; cj@will-law.org
        1139 East Knapp Street
        Milwaukee, WI 53202-2828
        414-727-9455; FAX: 414-727-6385